

FILED

2024 Feb-07  AM 10:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **SHANDRA MORRIS, as Administrator of the Estate of Montarius Brashon Morris,** | ) ) ) ) | |
| **Plaintiff;** | ) ) | |
| **vs.** | ) ) | **Case No.** |
| **OFFICER ROSS, OFFICER PERRY, CHAD BROOKS, JAY JOHNSON, KEVIN TURNER, SOUTHERN HEALTH PARTNERS, and MADISON COUNTY,** | ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| **Defendants.** | ) | |

## COMPLAINT

**COMES NOW** the Plaintiff, Shandra Morris, by and through her attorneys of record, and files this Complaint asserting the following causes of action and supporting the aforementioned by stating the facts and showing unto this Honorable Court as follows:

## I.    INTRODUCTION

1.    This is a civil action for compensatory, statutory, and punitive damages and for declaratory relief.  Plaintiff, on her own behalf and on behalf of the decedent, Montarius Brashon Morris, requests this Honorable Court declare

that the acts and/or omissions by Defendants were unconstitutional under the United States Constitution; and, by an award of compensatory, statutory, and punitive damages, compensate Plaintiff for the violations of the constitutional rights of the decedent, Montarius Brashon Morris, sufficient to deter the Defendants from further participation in such unconstitutional acts and/or omissions.

## II.      JURISDICTION AND VENUE

2.    This action arises under and is brought pursuant to 42 U.S.C. § 1983 to remedy the deprivations, under color of state law, of rights guaranteed by the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution. Plaintiff's claims for declaratory relief are authorized by 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the *Federal Rules of Civil Procedure*.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.  This Court has supplemental jurisdiction over all other claims (State Law Claims) alleged herein pursuant to 28 U.S.C. § 1367.

3.    One or more of the individual Defendants reside in Madison County, Alabama and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Madison County, Alabama.  Venue is proper in the United States District Court for the Northern District of Alabama pursuant to 28

U.S.C. §§ 1391(b)(1) and 1391(b)(2).  Plaintiff asserts that the Northeastern Division is the proper Division of the United States District Court for the Northern District of Alabama for the filing of this action.

4.    Plaintiff filed a Notice of Claim with Defendant Madison County before a year elapsed from the accrual of her state claims, as required by Ala. Code § 11-12-8.

### III.    <u>THE PARTIES</u>

5.    The Plaintiff, Shandra Morris, (hereinafter "Plaintiff") is an adult female, over the age of nineteen (19) years, who is the Mother of Montarius Brashon Morris and has been appointed as the Administrator of the Estate of Montarius Brashon Morris. Plaintiff resides in Madison County.

6.    The Defendant Officer Ross (hereinafter referred to as "Ross"), is an adult male and upon information and belief is a resident citizen of Madison County, Alabama, over the age of nineteen (19) years who was a law enforcement officer for Madison County, Alabama, at all times relevant to this *Complaint*. Defendant Ross is sued in his individual capacity and was on duty at Madison County Jail during at least a portion of the events giving rise to this complaint.

7.    The Defendant Officer Perry (hereinafter referred to as "Perry"), is an adult

male and upon information and belief is a resident citizen of Madison County, Alabama, over the age of nineteen (19) years who was a law enforcement officer for Madison County, Alabama, at all times relevant to this *Complaint*. Defendant Perry is sued in his individual capacity.

8.      The Defendant Chad Brooks (hereinafter referred to as "Brooks"), is an adult male and upon information and belief is a resident citizen of Madison County, Alabama, over the age of nineteen (19) years who was the Jail Administrator for Madison County Jail in Madison County, Alabama, at all times relevant to this *Complaint*. Defendant Brooks is sued in his individual capacity.

9.      The Defendant Jay Johnson (hereinafter referred to as "Johnson"), is an adult male and upon information and belief is a resident citizen of Madison County, Alabama, over the age of nineteen (19) years who was an investigator for the Madison County Sheriff's Office in Madison County, Alabama at all times relevant to this *Complaint*. Defendant Johnson is sued in his individual capacity.

10.     The Defendant Kevin Turner (hereinafter referred to as "Turner"), is an adult male and upon information and belief is a resident citizen of Marshall County, Alabama, over the age of nineteen (19) years who was the Sheriff of Madison County, Alabama at all times relevant to this *Complaint*. Defendant Turner is

sued in his individual capacity and was at all times relevant a final policymaker for Madison County Jail.

11. Defendant Southern Health Partners ("SHP") is a foreign corporation incorporated and with its principal place of business in Delaware. At all times relevant after 2015, SHP was contracted to provide healthcare services at the Madison County Jail.

12. Defendant Madison County is a duly constituted political subdivision of the State of Alabama. The county is a defendant in this action because, as detailed more specifically below, it maintains a policy, custom, and/or widespread practice of neglecting the health and welfare of prisoners in its county jail, thereby creating an independent basis of liability against the county pursuant to 42 U.S.C § 1983. The county is also responsible and liable under Ala. Code. § 11-47-24 to provide for defense. The relevant code section states, *"Whenever any employee of a municipal corporation of the State of Alabama shall be sued for damages arising out of the performance of his official duties, ...such government agency shall be authorized and required to provide defense counsel for such employees in such suit and to indemnify him from any judgment rendered against him in such suit."*

13. At all times relevant to this complaint, all Defendants were acting "under color

of State law."

## IV.   FACTUAL ALLEGATIONS

14.   In 2016, Quintrell Campbell, cousin of decedent Montarius Brashon Morris (hereinafter "Montarius"), was arrested and charged with the murder of two individuals in Madison County. Campbell's case remained pending at the time of the events recounted herein.

15.   Campbell's father, Cedric Coonrod, was and is good friends with Defendant Johnson.

16.   Defendant Johnson had allowed Coonrod to accompany him when he traveled to Georgia to extradite Campbell after Campbell fled the city to avoid arrest, and had allowed Coonrod back into the questioning area.

17.   On November 2, 2021, Campbell's murder case was set for a jury trial to occur on January 24, 2022.

18.   On January 5, 2022, Campbell and the State filed a joint motion to continue his trial, on the bases that they were working toward a plea agreement and that both attorneys had other trials scheduled for January 24, 2022.

19.   The motion to continue was denied on January 7, 2022, on the basis that the case was almost four years old and the judge saw no reason to let it remain pending for any longer.

20.   The trial set for January 24, 2022 did not occur; rather, on January 24, 2022, the judge entered an order setting a sentencing hearing for August 12, 2022.

21.   There is no record of whether a plea was entered on or around January 24, 2022.

22.   On February 4, 2022, Cedric Coonrod asked Campbell's sister Qunishay Coonrod to find out what kind of car Montarius drove.

23.   Defendant Johnson had agreed with Cedric Coonrod and Defendant Perry that they could bring in Montarius to take the fall for Campbell's actions.

24.   In the early morning of February 5, 2022, Montarius was giving his friend Malik a ride home when they noticed that their vehicle was being followed by a Madison County Sheriff's vehicle.

25.   Montarius and Malik pulled into a gas station and went inside, then came back out and left again, the officers continuing to follow them.

26.   Eventually, their vehicle was pulled over by Defendant Perry and other Madison County officers.

27.   Defendant Perry walked up to Montarius's vehicle and called him by a nickname

28.   Neither Montarius nor Malik were breaking any laws at the time of their traffic stop.

29.    Defendant Perry and the other officers searched Montarius's vehicle and found nothing untoward.

30.    Defendant Perry then stated that they were going to bring Montarius in on two secret indictments for murder.

31.    Montarius was booked in at the Madison County Jail at approximately 4:31 A.M. on February 5, 2022.

32.    No warrant or arrest report for Montarius's arrest on February 5, 2022 is available on Alacourt.

33.    Around 7:00 that evening, after Montarius laid down to rest, other prisoners in the jail noticed that Montarius was having trouble breathing.

34.    The other prisoners got on the intercom and told Defendant Ross, the on-duty officer at the time, that Montarius needed help.

35.    Defendant Ross told the prisoners to "get off the f***ing intercom."

36.    Defendant Ross said to "get the f*** away from the button or I will come in there and beat your a**. If he ain't dying and no one is dead then get the f*** away from the button."

37.    Defendant Ross was known inside the jail for "roughing up" prisoners.

38.    Officers at the jail made rounds around 8:00 P.M. and around 10:00 P.M. The other prisoners attempted to get help for Montarius but the officers paid no

mind and did not assist.

39.     Around midnight, the other prisoners noticed Montarius's breathing starting
        to stop.

40.     The next morning, the other prisoners found Montarius dead.

41.     Montarius's death certificate lists his cause of death as "Fentanyl,
        Fluorofentanyl and Oxycodone Toxicity."

42.     An autopsy found a blue pill in Montarius's digestive system.

43.     When asked why Montarius was indicted six years after allegedly committing
        the murders, a Huntsville Police spokesperson stated that "[S]ome new
        evidence came to light in this case and was provided to the grand jury."

44.     Defendant Turner stated that he believed that Montarius had ingested drugs
        prior to being booked into the jail.

45.     Montarius was booked into the jail thirteen hours before showing symptoms
        that he was having trouble breathing and at least nineteen hours before his
        death.

46.     It is well-known among detainees at Madison County Jail that one or more
        jail guards smuggle in drugs that they then extort the prisoners into buying.

47.     On January 24, 2023, one of Campbell's murder charges was reduced to
        burglary, to which he pled guilty. Campbell's other murder charge was nol

prossed by the State.

48.    Plaintiff Morris has attempted to get information about her son's death, such as any report regarding his arrest and any investigatory report regarding his death but has been denied by Defendant Pickens County and its agents at every turn.

49.    Over the course of many years, Defendant Madison County has repeatedly failed and refused to address widely known systemic deficiencies regarding the conditions within Madison County Jail.

50.    Due to previous and ongoing constitutional rights violations within the Madison County Jail causing harm to prisoners held there, in 2000, this Court instituted a consent decree which required Madison County to do the following, among other things:

    a.    "[P]rovide and pay for all necessary medical care…as required by the United States Constitution in a timely manner."

    b.    "[Employ a] sufficient number of qualified health care personnel…to ensure that inmates in the Jail have access at all times to constitutional adequate medical care."

    c.    "[Make available m]edical request forms…to inmates at all times."

d. "Under no circumstances [allow] non-medical personnel…to deny a request for medical, dental, or mental health care."

e. "[C]ause to be developed and implemented written policies and procedures regarding the handling of inmates suspected of being under the influence of alcohol or drugs or undergoing withdrawal. If an inmate experiences severe, life-threatening intoxication, overdose or withdrawal symptoms, the inmate shall be personally evaluated by a physician or registered nurse who shall issue instructions for care and observation of the inmate, or shall be transferred to a hospital or other appropriate facility for detoxification under medical supervision."

f. "[Check s]everely intoxicated persons…for responsiveness every fifteen (15) minutes, and [supervise] all intoxicated inmates…by television monitor or in person."

g. "[P]atrol all areas of the jail and…inspect each area at least once each hour."

h. "[M]ake provisions for safe housing and treatment of suicidal, intoxicated, mentally ill, and other inmates presenting special needs or risks."

i. "To ensure the security of the jail, the safety of the inmates, and
inmates' access to staff, health care services, and exercise…[staff] the
jail…with a constitutionally sufficient number of officers. Sufficient
staff shall be hired and trained such that the required staffing levels
can be maintained even during periods of staff illness and vacation."

51. Despite the existence of this consent decree, which has not been lifted,
Defendant Madison County has continued to maintain an unwritten custom
and practice of refusing to properly staff Madison County Jail or properly
care for prisoners housed in the Jail.

52. Defendant Madison County has refused to discipline and hold accountable
officers and other employees who neglect the care of prisoners in the Jail,
care that Madison County is constitutionally and legally obligated to
provide.

53. Defendant Madison County has continued to intentionally underfund
prisoner healthcare at Madison County Jail.

54. In 2005, officials at Madison County Jail allowed 19-year-old Ronald
Pinchon, being held for a misdemeanor, to share a cell with inmates being

held for capital murder and sodomy. Pinchon was beaten to death by the other prisoners in his cell.[1]

55.   In 2005, Jeffery T. Williams was being held at Madison County Jail when he told a guard he was having suicidal thoughts. He attempted suicide while on suicide watch. He was later removed from suicide watch and not screened or treated for mental health. He again attempted suicide after being allowed to walk around unsupervised and ended up permanently paralyzed.[2]

56.   In 2013, Nikki Listau was being held at the Madison County Jail for harassing communications. Listau suffered alcohol withdrawal while in the jail and broke a femur and multiple ribs after falling off of her bunk from seizing. Listau died later that day.[3]

57.   In 2013, Deundrez Woods was being held at the Madison County Jail for shoplifting and third-degree assault when he began hallucinating, became confused, and was unable to communicated with staff. After Woods was moved to the medical unit, staff there allowed him to continue to waste away, striking him with a Taser more times than they took his vitals over the

---

[1] https://november.org/stayinfo/breaking3/Tuscaloosa.html
[2] https://www.govinfo.gov/content/pkg/USCOURTS-alnd-5_08-cv-01148/pdf/USCOURTS-alnd-5_08-cv-01148-0.pdf
[3] https://kfor.com/news/lawsuits-alabama-prisoners-died-of-gangrene-constipation/

course of thirteen days, until he died fifteen days later from a blood clot originating in his gangrenous foot.[4]

58.   In 2013, Tanisha Jefferson was being held at the Madison County Jail on a harassment charge and told jail officials that she was experiencing rectal and abdominal pain and was unable to have a bowel movement. Jefferson filed a medical grievance six days afterward and finally saw a doctor four days after that. Jefferson told the jail that they would be responsible for her death if she died. The doctor prescribed her laxatives. The next day she began sweating and had difficulty breathing. The day after, she began suffering even more extreme abdominal pain. Jail staff did not call an ambulance for Jefferson until she became nonresponsive, almost half-an-hour after she passed out in her cell. Jefferson never woke up.[5]

59.   In 2014, Whitney Foster began showing significant signs of methadone withdrawal while being held at Madison County Jail. Although her symptoms got progressively worse day by day, jail staff did not help her and nurses accused her of faking. She began having strokes and seizures, during which she was ridiculed by staff. Jail staff knew that Foster should be hospitalized but did not send her. Foster was finally sent to the hospital

---

[4] https://kfor.com/news/lawsuits-alabama-prisoners-died-of-gangrene-constipation/
[5] https://kfor.com/news/lawsuits-alabama-prisoners-died-of-gangrene-constipation/

almost three weeks after being arrested and remained hospitalized for three weeks.[6]

60.   In 2014, Roy Lee Davis was processed into the Madison County Jail. Jail staff failed to identify Davis as suffering from alcohol withdrawal for several days, even though his symptoms escalated each day. Once they identified Davis as experiencing withdrawal, they refused to transfer him to a hospital in order to avoid needing to pay for his care. After placing Davis in medical isolation for three days, during which time he became "largely unresponsive," jail personnel contacted court personnel to have Davis released. Once Davis was released and the Jail no longer on the hook for his healthcare costs, he was taken to the emergency room and spent three days in the hospital.[7]

61.   In 2015, Defendant Madison County ended its contract with the previous medical provider for Madison County Jail and entered a contract with Defendant Southern Health Partners, paying Southern Health Partners $300,000 less than the county was paying the earlier provider.

62.   In 2015, Haraesheo Rice was being held in Madison County Jail. Jail staff knew that Rice had schizophrenia and bipolar disorder. Guards violently

---

[6] https://casetext.com/case/foster-v-advanced-corr-healthcare-inc
[7] https://shadowproof.com/2016/09/22/notorious-madison-county-ach-roy-davis/

assaulted Rice and knocked him out after he complained that the sprinkler in

his cell was broken. Rice alleged in a lawsuit, which later settled for

$32,000, that he was also not provided adequate health care.[8]

63.  In 2017, Brian Dallas was processed into the Madison County Jail and

identified as a drug and alcohol user. Dallas was later found unresponsive in

his cell and was pronounced dead after being taken to the hospital.[9]

64.  In 2019, Christopher Bishop told staff at Madison County Jail while he was

being booked that he had recently ingested a dangerous quantity of

methamphetamine. Bishop was seen by multiple nurses while showing signs

of an overdose, and by the next morning was unresponsive. None of these

nurses took Bishop to the hospital or sought other care for him. Bishop was

found dead in his cell that afternoon.[10]

65.  In 2020, J.D. Atchley was being held in Madison County Jail when he began

experiencing withdrawal from Xanax. Atchley had informed jail staff that he

had been taking Xanax. Atchely was not given proper care and was left to

languish for almost a week, at which time he became unresponsive. Only

then did jail staff call for an ambulance.

---

[8] https://www.prisonlegalnews.org/news/2019/jan/8/32000-settlement-excessive-force-case-involving-mentally-ill-alabama-prisoner/
[9] https://www.madisoncountysheriffal.org/press_view.php?id=148
[10] https://casetext.com/case/martinson-v-s-health-partners

66.     In 2020, Terran Burt was being held in Madison County Jail on a murder charge when he was killed by another prisoner in the jail.[11]

67.     In 2021, Enrique Torres was being held in Madison County Jail when he experienced apparent cardiac issues and later passed away.[12]

68.     In 2022, a woman being held in Madison County Jail for a probation violation died by suicide..[13]

69.     In 2022, Patrick Lee Bone was found unresponsive in his Madison County Jail cell. Bone, who was being held on drug charges, was pronounced dead at the hospital.[14]

70.     In 2022, Don Nunez was being held in Madison County Jail for a DUI when he slipped and fell, causing a stroke. Eleven months later, jail staff still refused to allow for enough medical testing to find out why Nunez still had blood in his brain.

71.     In 2023, William Colbert was being held in Madison County Jail for a probation violation when he suffered a "sudden medical emergency" and

---

[11] https://www.rocketcitynow.com/article/news/local/inmate-killed-madison-county-jail-murder-investigation-underway/525-005c83b5-3997-4da2-8516-47b8803cf35f
[12] https://www.rocketcitynow.com/article/news/local/madison-county-jail-inmate-dies-cardiac-issues/525-ae1ef36d-ad0a-4d86-affe-e1e63cfa3c66
[13] https://www.wvua23.com/2-found-dead-over-3-days-in-north-alabama-jail/
[14] https://whnt.com/news/huntsville/investigation-opened-after-inmate-died-in-madison-county-jail/?utm_source=facebook.com&utm_campaign=socialflow&utm_medium=referral&fbclid=IwAR3RMhm3hHzYz6OXlMoRbRfTF5dJ4dl8wBcF1u04-wfAOv8lhk89Bx5UNhE

was found unresponsive in his cell. He was pronounced dead at the hospital.[15]

72.     In 2023, Coryell Derrick was being held in Madison County Jail for probation and traffic violations and was found dead in his cell after what the Sheriff's Office termed a "sudden medical emergency."[16]

73.     In 2023, a man being held in Madison County Jail on a mischief charge was found unresponsive in his cell after apparently attempting to kill himself. The man died at the hospital.[17]

74.     In 2023, a man being held in Madison County Jail for possession of a controlled substance was found dead in his cell as a result of possible suicide.[18]\

75.     In 2023, Phillip Wright was being held in Madison County Jail on a probation violation and died after collapsing in his cell after having spent two weeks in the infirmary.[19]

76.     In 2023, Defendant Turner stated: "[w]e do have a great working relationship with [Defendant Southern Health Partners]…[a]s far as the

---

[15] https://www.waff.com/2023/04/17/madison-county-jail-inmate-dies-following-sudden-medical-emergency/
[16] https://www.al.com/news/2023/09/45-year-old-inmate-dies-at-madison-county-jail.html
[17] https://www.waaytv.com/news/huntsville/investigation-underway-after-inmate-found-dead-at-madison-county-jail/article_0ce0076c-83d6-11ee-b98e-43fd958a481b.html
[18] https://www.waaytv.com/news/crime/madison-county-sheriff-inmate-found-dead-in-jail-cell/article_dd2478ac-87ed-11ee-9127-4b14331a96bb.html
[19] https://whnt.com/news/huntsville/madison-county-sheriffs-office-investigating-inmate-death/

relationship goes and what they do for our jail, they have really done a good job since I've been here."

77.   Defendant Southern Health Partners has a similarly tragic record of allowing incarcerated persons to go without care at many of the other jail facilities that it services.

78.   The County has failed to provide any meaningful oversight to Defendant SHP's understaffing of Madison County Jail, in part because the County saves money when SHP sends fewer nurses.

79.   Because of the aforementioned customs and practices, staff at Madison County Jail and for SHP subjectively believed, and had good reason to know, that they would never suffer any negative consequences for providing inadequate medical care. Thus, the custom and practice resulted in encouraging Madison County Jail staff and SHP employees to provide inadequate care.

80.   The County was subjectively aware of the risk of harm of such a custom and policy, but, despite its knowledge, took no action to stop the custom and practice and thus knowingly allowed it to continue. The County and its governing officials knew this custom and practice created a substantial risk of serious harm to and the deprivation of constitutional rights of prisoners in

Madison County Jail. They also knew the continuance of the custom and policy would result in the infliction of unnecessary pain and suffering. They were on notice of the custom and practice from complaints, communications from correctional officers, from their own observations, from common sense, from other injuries and death, from other lawsuits and by other ways.

## CLAIMS

### COUNT ONE
**FOURTEENT AMENDMENT FAILURE TO PROTECT**
**Defendants Brooks, Turner, and Madison County**
**42 U.S.C. § 1983**

81.   Plaintiff adopts and incorporates paragraphs 1-80 of the complaint as fully set forth herein.

82.   Under the Fourteenth Amendment, Montarius as a pretrial detainee was owed a duty of protection by Defendants because he was incarcerated and unable to fully protect himself or fully remove himself from any situation.

83.   Defendants Brooks, Turner, and Madison County knowingly turned a blind eye to the smuggling in of illegal, addictive, and potentially deadly drugs into the Madison County Jail.

84.   While incarcerated at the Madison County Jail, Montarius was subjected to and harassed by someone with fentanyl, which he took whether intentionally, knowingly, or neither.

85.   Montarius's ingestion of fentanyl led directly to his death.

86.   The fentanyl that Montarius ingested came into the jail through a guard or officer employed there by Defendant Madison County.

87.   The officers' unlawful actions and Defendants' unlawful omissions created the conditions that resulted in Montarius's death and were the proximate cause of his death.

88.   Defendants' actions and inactions were deliberately indifferent to their potential consequences.

**WHEREFORE PREMISES CONSIDERED,** Plaintiff seeks compensatory damages as allowed by law; statutory damages pursuant to 42 U.S.C. §§ 1983 and 1988; Punitive damages as allowed by law; reasonable attorneys' fees, court cost and expenses pursuant to 42 U.S.C. § 1988 or otherwise appropriate; that the Court determine and declare the actions of Defendants to be improper, illegal and/or unconstitutional and as such void and without legal effect; and such other further, and different relief as to which Plaintiff is entitled.

### COUNT TWO
### INADEQUATE MEDICAL CARE
### Defendants Ross and Southern Health Partners
### CIVIL RIGHTS—42 U.S.C. § 1983

89.   Plaintiff realleges and incorporates by reference paragraphs 1-80 of this complaint.

90.   Defendant Ross was on notice that Montarius was in a condition requiring medical attention when he was told by the other prisoners that Montarius was having trouble breathing.

91.   While Montarius was in custody at the jail, his medical condition steadily deteriorated in ways that were obvious and known to those around him.

92.   The deterioration of Montarius's health was obviously significant enough for him to require medical attention and stabilization for at least several hours prior to Montarius was discovered deceased.

93.   Defendant Ross was deliberately indifferent to Montarius's medical needs and the increase in those needs as Montarius's health and condition declined while in his care, custody and control, and in doing so did act with malice or reckless indifference to his federally protected rights intentionally violated his constitutional rights.

94.   Defendant Southern Health Partners deliberately kept Madison County Jail understaffed so that they could make more money.

95.   As a direct and proximate result of Defendant's actions and purposeful inactions, Montarius was injured and damaged and ultimately lost his life, being deprived of his right to adequate medical care under the Fourteenth Amendment to the United States Constitution.

96.   The Plaintiff claims damages against the Defendants for said constitutional violations.

**WHEREFORE PREMISES CONSIDERED,** Plaintiff seeks compensatory damages as allowed by law; statutory damages pursuant to 42 U.S.C. §§ 1983 and 1988; Punitive damages as allowed by law; reasonable attorneys' fees, court cost and expenses pursuant to 42 U.S.C. § 1988 or otherwise appropriate; that the Court determine and declare the actions of Defendant to be improper, illegal and/or unconstitutional and as such void and without legal effect; and such other further, and different relief as to which Plaintiff is entitled.

**<u>COUNT THREE</u>**
**WRONGFUL DEATH**
**All Defendants**
**Alabama State Law**

97.   Plaintiff realleges and incorporates by reference paragraphs 1-80 of this complaint.

98.   The negligent, malicious, and/or intentional acts and inactions of Defendants recounted above led to Montarius's unnecessary, avoidable, and wrongful death.

99.   Specifically Defendants Johnson and Perry's intent to falsely incarcerate Montarius, Defendant Ross's denial of Montarius's need for medical care,

Defendant SHP's failure to properly staff the jail to have a medical professional there to observe Montarius's obvious medical need, and Defendants Brooks, Turner, and Madison County's ratification of all of the above led directly to Montarius's death.

**WHEREFORE PREMISES CONSIDERED**, Plaintiff seeks punitive damages as allowed by law; and such other further, and different relief as to which Plaintiff is entitled.

## Count FOUR
## 42 U.S.C. § 1983
## False Arrest
## Defendant Perry

100.  Plaintiff incorporates herein by reference as if fully set forth the allegations of ¶¶1-80 of the Complaint.

101.  Defendant stopped and arrested Montarius without probable cause to believe that he had committed a crime.

102.  Defendant arrested Montarius at the urging and behest of a personal friend of a sheriff's office employee whose family stood to gain from having Montarius arrested for murder.

103.  Montarius's charges were dismissed after his death.

**WHEREFORE   PREMISES   CONSIDERED,**  Plaintiff   seeks

compensatory damages as allowed by law; statutory damages pursuant to 42 U.S.C. §§ 1983 and 1988; Punitive damages as allowed by law; reasonable attorneys' fees, court cost and expenses pursuant to 42 U.S.C. § 1988 or otherwise appropriate; that the Court determine and declare the actions of Defendant to be improper, illegal and/or unconstitutional and as such void and without legal effect; and such other further, and different relief as to which Plaintiff is entitled.

## COUNT FIVE
### MALICIOUS PROSECUTION
### Defendants Perry and Johnson
### 42 U.S.C. § 1983

104.   Plaintiff incorporates herein by reference as if fully set forth the allegations of ¶¶1-80 of the Complaint.

105.   Defendants arrested Montarius without probable cause to believe that he had committed a crime.

106.   Defendants arrested Montarius at the urging and behest of a personal friend of a sheriff's office employee whose family stood to gain from having Montarius arrested for murder.

107.   Montarius's charges were dismissed after his death.

**WHEREFORE   PREMISES   CONSIDERED,** Plaintiff   seeks

compensatory damages as allowed by law; statutory damages pursuant to 42 U.S.C. §§ 1983 and 1988; Punitive damages as allowed by law; reasonable attorneys' fees, court cost and expenses pursuant to 42 U.S.C. § 1988 or otherwise appropriate; that the Court determine and declare the actions of Defendant to be improper, illegal and/or unconstitutional and as such void and without legal effect; and such other further, and different relief as to which Plaintiff is entitled.

### COUNT SIX
**CONSPIRACY**
**Defendants Perry and Johnson**
**42 U.S.C. § 1983**

108. Plaintiff incorporates herein by reference as if fully set forth the allegations of ¶¶1-80 of the Complaint.

109. Defendants arrested Montarius without probable cause to believe that he had committed a crime.

110. Defendants arrested Montarius at the urging and behest of a personal friend of a sheriff's office employee whose family stood to gain from having Montarius arrested for murder.

111. Montarius's charges were dismissed after his death.

**WHEREFORE PREMISES CONSIDERED,** Plaintiff seeks compensatory damages as allowed by law; statutory damages pursuant to 42 U.S.C. §§ 1983 and 1988; Punitive damages as allowed by law; reasonable attorneys' fees,

court cost and expenses pursuant to 42 U.S.C. § 1988 or otherwise appropriate; that the Court determine and declare the actions of Defendant to be improper, illegal and/or unconstitutional and as such void and without legal effect; and such other further, and different relief as to which Plaintiff is entitled.

**COUNT SEVEN**
**FOURTEENTH AMENDMENT *MONELL* CLAIM**
**Defendants Brooks, Turner, Southern Health Partners, and Madison County**
**42 U.S.C. § 1983**

112.   Plaintiff adopts and incorporates paragraphs 1-80 of the complaint as fully set forth herein.

113.   Under the Fourteenth Amendment, Montarius as a pretrial detainee was owed a duty of protection by Defendants because he was incarcerated and unable to fully protect himself or fully remove himself from any situation.

114.   Defendants failed to properly supervise Defendant Ross, the other guards on duty at the jail, and the medical staff at the jail regarding the proper level of care for detainees such as Montarius.

115.   Defendants were aware of a need for extensive supervision regarding medical care so. Defendant Madison County specifically knew that it was required to provide a certain level of care both constitutionally and under the active consent decree.

116. With deliberate indifference to the rights of citizens, Defendants failed to adequately supervise their officers and employees.

117. Defendants were aware that deprivation of the constitutional rights of citizens was likely to result from its lack of supervision.

118. As such, Defendants were deliberately indifferent and exhibited reckless disregard with respect to the potential violation of constitutional rights.

119. The failure to supervise constituted official policies, practices, or customs of Defendant Madison County.

120. As a direct and proximate result of Defendants' acts and omissions, Montarius suffered significant physical injuries, pain and suffering, and death.

121. As a direct and proximate result of the acts and omissions described herein, Montarius suffered compensatory and special damages as defined under federal common law and in an amount to be determined by jury.

122. The conduct by the officers identified in this Complaint and described herein constitutes inadequate medical care under the Fourteenth Amendment.

123. At all material times, the officers acted under color of state law, as agents of the various municipalities and entities identified in the complaint.

124.   At all material times, the officers wore their official department uniforms and were acting within the course and scope of their duties as officers and agents of the municipalities and/or agencies identified in this complaint.

125.   Defendants Brooks and Turner were at all relevant times policy makers for their respective departments.

126.   Thus, the departments identified in this complaint ratified the practices that led to Montarius's death.

**WHEREFORE PREMISES CONSIDERED,** Plaintiff seeks compensatory damages as allowed by law; statutory damages pursuant to 42 U.S.C. §§ 1983 and 1988; Punitive damages as allowed by law; reasonable attorneys' fees, court cost and expenses pursuant to 42 U.S.C. § 1988 or otherwise appropriate; that the Court determine and declare the actions of Defendants to be improper, illegal and/or unconstitutional and as such void and without legal effect; and such other further, and different relief as to which Plaintiff is entitled.

*Respectfully* submitted,

  **//s// Richard A. Rice_____**
  **Richard A. Rice**

The Rice Firm, LLC
Post Office Box 453
Birmingham, Alabama 35203-0453
**rrice@rice-lawfirm.com**


## <u>PLAINTIFF DEMANDS A TRIAL BY JURY</u>