FILED

2024 Aug-27  PM 01:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| SHANDRA MORRIS, as Administrator of the Estate of Montarius Brashon Morris,<br><br>    Plaintiff,<br><br>vs.<br><br>OFFICER ROSS, OFFICER PERRY, CHAD BROOKS, JAY JOHNSON, KEVIN TURNER, SOUTHERN HEALTH PARTNERS, and MADISON COUNTY,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. 5:24-cv-00142-CLS |

### MEMORANDUM OPINION

Plaintiff, Shandra Morris, is the mother of Montarius Brashon Morris, who died while detained in the Madison County, Alabama, Jail. She contends that her son's rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution were violated while in the defendants' custody. Her complaint contains 126 paragraphs, divided among seven counts which allege claims against seven defendants. Six of those counts are based upon 42 U.S.C. § 1983, and one is a supplemental state law claim for wrongful death. Plaintiff's § 1983 claims against three of the seven defendants — *i.e.*, the governmental entity known as *Madison*

*County, Alabama*; the Sheriff of Madison County, *Kevin Turner*; and, the Administrator of the Madison County Jail, *Chad Brooks* — were dismissed with prejudice by the Order entered on June 5, 2024 (doc. no. 49).[1]  The case now is before the court on the motions to dismiss filed by the remaining defendants:  *i.e.*, *Southern Health Partners* (doc. no. 10); Madison County Sheriff's Department Investigator *Jay Johnson* (doc. no. 18); Madison County Jail Detention Officer *Dakota Ross* (doc. no. 50); and, Madison County Deputy Sheriff *Jacob Perry* (doc. no. 52).  Following consideration of the complaint, motions, and briefs of counsel, the court enters the following opinion.

## I. PLAINTIFF'S ALLEGATIONS

Quintrell Campbell, a cousin of the plaintiff's son, was charged on some unspecified date in 2016 with the murders of two persons in Madison County, Alabama.[2]  Campbell "fled the city to avoid arrest."[3]  [**Note**:  This is the first of several confusing contradictions in plaintiff's complaint.  Paragraph 14 alleges that Quintrell Campbell "*was arrested* and charged with the murder of two individuals in

---

[1] The claims alleged against the three defendants referenced in text were asserted in Count One (for "failure to protect" plaintiff's son from "illegal, addictive, and potentially deadly drugs" which allegedly were "smuggled" into the Madison County Jail, and which plaintiff's son "took whether intentionally, knowingly, or neither"), doc. no. 1 (Complaint), ¶¶ 82-88; and, Count Seven (a so-called "Fourteenth Amendment *Monell* Claim" for the defendants' deliberate indifference to adequate supervision of their officers and employees), *id*. ¶¶ 113-126.

[2] *Id*. ¶ 14.

[3] *Id.* ¶ 16.

Madison County" (emphasis supplied), but paragraph 16 alleges that "Campbell fled the city *to avoid arrest"* (emphasis supplied).]

The father of Quintrell Campbell, Cedric Coonrod, was a friend of Madison County Sheriff's Investigator *Jay Johnson*.[4]  Plaintiff alleges that *Johnson* "allowed Coonrod to accompany him when he traveled [on some unspecified date] to Georgia to extradite Campbell after Campbell fled the city to avoid arrest, and . . . allowed Coonrod back into the questioning [*sic*] area."[5]  The Alabama state court trial of Campbell's murder case was scheduled to begin on Monday, January 24, 2022,[6] but did not occur.  The trial judge denied a joint motion to continue,[7] and "entered an order setting a sentencing hearing for August 12, 2022."[8]  Even so, "[t]here is no record of whether a plea was entered on or around January 24, 2022."[9]

A.    **Arrest of Plaintiff's Son**

During the early morning hours of Saturday, February 5, 2022, Madison County Deputy Sheriff *Jacob Perry* and "other [*unnamed*] Madison County officers" stopped a vehicle driven by plaintiff's son, Montarius Brashon Morris

---

[4] *Id*. ¶ 15 ("Coonrod, was and is good friends with Defendant Johnson.").

[5] *Id.* ¶ 16 (alterations supplied).

[6] Doc. no. 1 (Complaint), ¶ 17.

[7] *Id*. ¶¶ 18-19.

[8] *Id*. ¶ 20.

[9] *Id*. ¶ 21 (alteration supplied).

("Montarius").[10]  Plaintiff alleges that Investigator *Jay Johnson* agreed with Cedric Coonrod and Deputy Sheriff *Jacob Perry* "that they could bring in Montarius to take the fall for Campbell's actions."[11]  After Montarius's automobile was searched, *Jacob Perry* stated that the officers "were going to bring Montarius in on two *secret indictments* for murder."[12]  [**Note**:  Even though plaintiff's complaint does not explicitly say so, she implies that the murders for which her son was arrested on February 5, 2022, were the same homicides for which Quintrell Campbell previously had been charged on some unspecified date in 2016.[13]  Review of publicly-available records from the Circuit Court of Madison County, Alabama, establishes that is correct.  Quintrell Marquis Campbell was charged in an indictment returned on June 19, 2018, with two counts of Murder for the deaths of Jaylen Cosby and Khayree Austin in violation of Alabama Code § 13A-6-2(a)(3):  *i.e.*, while committing or attempting to commit the crime of burglary in the first or second degree, or in immediate flight therefrom, Quintrell Marquis Campbell, or another participant

---

[10] *Id.* ¶¶ 24, 26.

[11] *Id*. at ¶ 23.

[12] Doc. no. 1 (Complaint), ¶ 30 (emphasis supplied).

[13] *E.g.*, doc. no. 1 (Complaint), ¶ 43 ("When asked why Montarius was indicted six years after allegedly committing the murders, [an unnamed] *Huntsville Police* [*not* Madison County] *spokesperson* stated that '[S]ome new evidence came to light in this case and was provided to the grand jury.'") (first two alterations and emphasis supplied).  *See also*, *e.g.*, *id*. ¶¶ 24-26, 30; doc. no. 19 (Jay Johnson Brief), at 3 ("During the early morning hours of February 5, 2022, [plaintiff's son] was arrested by co-defendant 'Officer Perry' during a traffic stop based upon *two grand jury indictments* for murders allegedly committed six years earlier.") (alteration and emphasis supplied).

(Tyrek Jamar), caused the deaths of Jaylen Cosby and Khayree Austin by shooting them with a gun.[14]  In like manner, plaintiff's son, Montarius Brashon Morris, was charged in an indictment returned on February 4, 2022, with two counts of Murder for the deaths of the same persons, in violation of the same state statute.[15]]

## B.    Detention of Plaintiff's Son

Following his arrest, Montarius was booked into the Madison County Jail at 4:31 a.m. on Saturday, February 5, 2022.[16]  Around 7:00 p.m. that evening — some thirteen hours after Montarius was booked into the jail — other detainees noticed that he "was having trouble breathing."[17]  The detainees used the jail intercom in an effort to tell Jail Detention Officer *Dakota Ross* that Morris needed assistance.[18]  Ross rebuked the detainees, however, telling them to "get off the f***ing intercom," and to "get the f*** away from the [intercom] button or I will come in there and beat you're [sic] a**.  If he ain't dying and no one is dead then get the f*** away from the

---

[14] Madison County, Alabama, Circuit Court Case No. CC-2018-002789, doc. no. 1 (Indictment).  The charge of felony murder alleged in Count Two of that indictment was amended to Burglary in the First Degree on January 24, 2023, and defendant entered a plea of guilty.  He was sentenced on February 16, 2023 to imprisonment for a term of ten years, suspended, and placed on probation for five years.  *Id.* doc. no. 48.  The charge of felony murder alleged in Count One was *nolle prossed* on the same date, February 16, 2023.  *Id.* doc. no. 50.

[15] Madison County, Alabama, Circuit Court Case No. CC-2022-000703, doc. no. 1 (Indictment).  The indictment was dismissed on February 10, 2022, due to the death of the defendant. *Id.*, doc. no. 7 (Motion to Abate by Reason of Death).

[16] Doc. no. 1 (Complaint) ¶ 31.

[17] *Id.* ¶ 33.

[18] *Id.* ¶ 34.

button."[19]

Unnamed "officers at the jail" made rounds around 8:00 p.m. and 10:00 p.m. on Saturday, February 5, 2022, but ignored attempts by some detainees to obtain assistance for Montarius.[20]  Other detainees noticed his breathing slowing around midnight.[21]  At some unspecified time during the following morning (Sunday, February 6, 2022), inmates found Montarius dead.[22]

An autopsy was conducted, and a "blue pill" was found in the digestive system of plaintiff's son.[23]  The Coroner's death certificate listed the cause of his death as "Fentanyl, Fluorofentanyl and Oxycodone Toxicity."[24]

## C.    Allegations Against Southern Health Partners

Madison County, Alabama entered into a contract with defendant *Southern Health Partners, Inc.*, to provide health care services in the Madison County Jail,

---

[19] *Id.* ¶ 36 (alteration supplied).

[20] *Id.* ¶ 38.

[21] Doc. no. 1 (Complaint) ¶ 39.

[22] *Id.* ¶ 40.

[23] *Id.* ¶ 42.

[24] *Id.* ¶ 41; *see also id.* ¶ 85 ("Montarius's ingestion of fentanyl led directly to his death."). Elsewhere in the complaint, plaintiff alleges that:  during the hours following her son's incarceration in the Madison County Jail, he "was subjected to and harassed by someone with fentanyl, which he took whether intentionally, knowingly, or neither" (*id.* ¶ 84); the "fentanyl that Montarius ingested came into the jail through a guard or officer employed there by [the dismissed] Defendant Madison County" (*id.* ¶ 86); and that, the defendants dismissed by the Order entered on June 5, 2024 — *i.e.*, *Chad Brooks* (Administrator of the Madison County Jail), *Kevin Turner* (Sheriff of Madison County), and *Madison County, Alabama* — "turned a blind eye to the smuggling in of illegal, addictive, and potentially deadly drugs into the Madison County Jail" (*id.* ¶ 83).

beginning in 2015.[25]  The County paid Southern Health Partners $300,000 less than the previous health care provider.[26]  Allegedly, "Southern Health Partners deliberately kept Madison County understaffed so that they [*sic*] could make more money."[27]

## II.  STANDARD OF REVIEW

The relevant portion of Federal Rule of Civil Procedure 12 permits a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  That rule must be read together with Rule 8(a), which requires that a pleading contain only a "*short and plain statement* of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (emphasis added).  While that pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 550 (2007), it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).  As the Supreme Court stated in *Iqbal*:

> A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  [*Twombly*, 550 U.S. at 555].  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  *Id.* at 557.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that

---

[25] Doc. no. 1 (Complaint) ¶ 11.

[26] *Id.* ¶ 61.

[27] *Id.* ¶ 94.

is plausible on its face." *Id.* at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.   *Id.* at 556.   The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  *Ibid.*  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.* at 557 (brackets omitted).

Two working principles underlie our decision in *Twombly*.  *First*, the tenet that a court must accept as true all of the allegations contained in a compliant is *inapplicable to legal conclusions*.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  *Id.* at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. *Second*, only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Id.* at 556.  Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  409 F.3d at 157–58.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "show[n]" — "that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While *legal conclusions* can provide the framework of a complaint, they must be supported by factual allegations.  *When there are well-pleaded factual allegations, a court should assume their veracity and then*

*determine whether they plausibly give rise to an entitlement of relief.*

*Iqbal*, 556 U.S. at 678-79 (emphasis supplied, second and fourth alterations in original, other alteration supplied).

## III.  MOTIONS TO DISMISS

### A.    Southern Health Partners

Plaintiff alleges three claims against Southern Health Partners.  Two are based upon 42 U.S.C. § 1983: *i.e.*, a claim for deliberate indifference to Montarius's serious medical needs;[28] and a claim for failure to protect Montarius in violation of his constitutional rights.[29]  Plaintiff's third claim, for the wrongful death of her son, is based upon Alabama law.[30]

Southern Health Partners argues that all claims asserted against it should be dismissed for plaintiff's failure to allege sufficient facts to state a claim upon which relief can be granted.  Indeed, plaintiff merely alleges that her son

> was booked into the jail one morning, that he then took Fentanyl at some point [during] that day, that he began showing symptoms that he was having trouble breathing [about] 13 hours after he was booked in, that jail officers did not assist him, and that he was found dead the next morning.  *There is no allegation, at all, regarding any conduct by*

---

[28] *Id*. ¶¶ 89-96 (Count Two) (asserted against both Southern Health Partners and Jail Detention Officer Dakota Ross).

[29] *Id*. ¶¶ 112-126 (Count Seven) ("Fourteenth Amendment *Monell* Claim" asserted against Southern Health Partners and the three dismissed defendants, Madison County, Sheriff Turner, and Jail Administrator Chad Brooks).

[30] *Id*. ¶¶ 97-99 (Count Three) (asserted against all defendants).

*Southern Health Partners.*

Doc. no. 11 (Southern Health Partners' Brief), at 7 (alterations and emphasis supplied).

Plaintiff's response consists of speculative and conclusory statements that can be boiled down to an assertion that, because Southern Health Partners was the jail's health care provider, and because it allegedly understaffed the jail, it is liable for Montarius's death. That is not enough to satisfy the pleading requirements of Rules 8 and 10, or the principles set forth in *Twombly* and *Iqbal*. Accordingly, all of plaintiff's claims against Southern Health Partners are due to be dismissed.

## B. Defendants Jay Johnson and Jacob Perry

### 1. Shotgun pleading

Sheriff's Investigator *Jay Johnson* and Deputy Sheriff *Jacob Perry* contend that plaintiff's complaint should be dismissed as an impermissible "shotgun pleading."[31]

As previously noted, Federal Rule of Civil Procedure 8 requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 10 requires a plaintiff to "state [her] claims or defenses in numbered paragraphs, each limited as far as practicable to a single set

---

[31] *See* doc. no. 19 (Jay Johnson Brief), at 6-10; doc. no. 53 (Jacob Perry Brief), at 6-10.

of circumstances." Fed. R. Civ. P. 10(b) (alteration supplied). So-called "shotgun pleadings" violate those rules because they "fail to one degree or another . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Sheriff's Department*, 792 F.3d 1313, 1323 (11th Cir. 2015) (ellipsis supplied).

The Eleventh Circuit has repeatedly condemned shotgun pleadings, and demonstrated "little tolerance" for them. *See, e,g.*, *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294-95 (11th Cir. 2018); *Davis v. Coca-Cola Bottling Co. Consolidated*, 516 F.3d 955, 979-80 & n.54 (11th Cir. 2008) (listing numerous cases). Shotgun pleadings "waste scarce judicial resources, 'inexorably broaden[ ] the scope of discovery,' 'wreak havoc on appellate court dockets,' and 'undermine[ ] the public's respect for the courts.'" *Vibe Micro*, 878 F.3d at 1295 (quoting *Davis*, 516 F.3d at 981-83) (alterations in original).

The Eleventh Circuit's opinion in the *Weiland* case, *supra*, identified four categories of shotgun pleadings:

> **[1]** The most common type — by a long shot — is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. **[2]** The next most common type . . . is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and

11

immaterial facts not obviously connected to any particular cause of action.  **[3]** The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim of relief.  **[4]** Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Weiland*, 792 F.3d at 1321-23 (bracketed alterations and ellipsis supplied, footnotes omitted).

Plaintiff's complaint unquestionably is a "shotgun pleading."  In particular, plaintiff incorporates all eighty factual allegations into each of the seven counts. However, many of her factual allegations relate to only one or two counts, or none at all.  For example, paragraphs 54 through 75 identify incidents that allegedly occurred in the Madison County Jail over a nearly twenty-year period, but which have no apparent connection to the claims asserted in the present suit.  Therefore, defendants are left to speculate as to which factual allegations pertain to which count.

Ordinarily, a plaintiff would be given an opportunity to amend the complaint to correct the pleading deficiencies.  Here, however, as discussed below, there are other deficiencies in plaintiff's claims.

### 2.    Abatement of § 1983 claims against Johnson and Perry

Section 1983 authorizes private parties to enforce federal constitutional rights (and some federal statutory rights) by bringing suit against governmental officials and

entities whose conduct under color of state law allegedly deprived the plaintiff of rights, privileges, or immunities secured by the United States Constitution or federal statutes.  The pertinent portion of the statute provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, *shall be liable to the party injured* in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983 (emphasis supplied).  That statute is the basis for plaintiff's claim for false arrest against Deputy Sheriff *Jacob Perry* in Count Four, and for her claims against both *Perry* and Investigator *Jay Johnson* for malicious prosecution and conspiracy in Counts Five and Six, respectively.  Perry and Johnson contend that those claims are barred by Alabama's survivorship statute, which provides that:

> In all proceedings not of an equitable nature, all claims upon which an action has been filed and all claims upon which no action has been filed on a contract, express or implied, and all personal claims upon which an action has been filed, except for injuries to the reputation, survive in favor of and against personal representatives; and all personal claims upon which no action has been filed survive against the personal representative of a deceased tortfeasor.

Ala. Code § 6-5-462 (1975).  That language is no model of clarity, but it has been interpreted as providing that "unfiled tort claims do not survive the death of the putative plaintiff."  *Bassie v. Obstetrics & Gynecology Associates of Northwest*

*Alabama, P.C.*, 828 So. 2d 280, 282 (Ala. 2002).

The Eleventh Circuit's opinion in *Estate of Gilliam ex rel. Waldroup v. City of Prattville*, 639 F.3d 1041 (11th Cir. 2011), addressed the question of whether a § 1983 claim for the use of excessive force that did not cause the victim's death, but which was not filed prior to the putative plaintiff's death, survived or was abated by the foregoing statute. The Court's majority opinion explained that:

> By its terms, 42 U.S.C. § 1983 does not provide for the survival of civil rights actions. Due to this "deficiency" in the statute, the survivorship of civil rights actions is governed by 42 U.S.C. § 1988(a). *Robertson v. Wegmann*, 436 U.S. 584, 588-89, 98 S. Ct. 1991, 1994, 56 L. Ed. 2d 554 (1978). That statute generally directs that, where federal law is "deficient," the state law of the forum applies as long as it is "not inconsistent with the Constitution and the laws of the United States." 42 U.S.C. § 1988(a).[32]
>
> The Supreme Court has interpreted § 1988(a) as requiring a "three-step process" to determine the rules of decision applicable to civil rights claims. *Wilson v. Garcia*, 471 U.S. 261, 267, 105 S. Ct. 1938, 1942, 85 L. Ed. 2d 254 (1985) (superseded by statute on other grounds); *Burnett v. Grattan*, 468 U.S. 42, 47-48, 104 S. Ct. 2924, 2928, 82 L. Ed.

---

[32] 42 U.S.C. § 1988(a) provides, in pertinent part:

"The jurisdiction in civil and criminal matters conferred on the district courts . . . for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause. . . ."

2d 36 (1984); *Moore v. Liberty Nat'l Life Ins. Co.*, 267 F.3d 1209, 1214 (11th Cir. 2001).  Courts must first look to federal law "so far as such laws are suitable to carry [the civil and criminal civil rights statutes] into effect."  42 U.S.C. § 1988(a).  Second, if federal law is "not adapted to the object" or is "deficient in the provisions necessary to furnish suitable remedies and punish offenses," courts must apply the law of the forum state.  *Id*.  Third, if application of state law is "inconsistent with the Constitution and laws of the United States," courts must not apply state law.  *Id*.

*Estate of Gilliam*, 639 F.3d at 1045 (majority opinion) (footnote and alteration in original).  The opinion went on to employ the analytical framework established by the Supreme Court in *Robertson v. Wegmann*, 436 U.S. 584 (1978) — a case that analyzed Louisiana's survivorship statute — and concluded that Alabama Code § 6-5-462 is not inconsistent with federal law.  *Estate of Gilliam*, 639 F.3d at 1049.

Accordingly, in cases such as this one, where the defendants' alleged constitutional violations did not cause the death of the person upon whom the violations were inflicted, but the victim dies before the § 1983 claims can be filed, the claims are abated under Alabama law, and do not survive the death of the putative plaintiff.[33]

---

[33] On the other hand, unfiled claims of constitutional violations that allegedly cause the death of a putative plaintiff still can be asserted through Alabama's wrongful death statute, Alabama Code § 6-5-410.  "That proposition finds support in a number of reported cases, where Alabama's wrongful death statute . . . has consistently been applied through § 1988 to actions under § 1983."  *Estate of Gilliam ex rel. Waldroup v. City of Prattville*, 639 F.3d 1041, 1047 n.9 (11th Cir. 2011) (majority opinion) (citing, *e.g.*, *City of Tarrant, Ala. v. Jefferson*, 682 So. 2d 29, 29–31 (Ala. 1996); *Weeks v. Benton*, 649 F. Supp. 1297, 1309 (S.D. Ala. 1986); *Brown v. Morgan County, Ala.*, 518 F. Supp. 661, 665 (N.D. Ala. 1981)).

In summary, Alabama Code § 6-5-462 applies to and bars plaintiff's § 1983 claims against defendants Perry and Johnson.  While plaintiff appears to allege that her son's arrest by Perry and Johnson set in motion a chain of events that ended in Montarius's death, she has not plausibly pled that the alleged constitutional violations *caused* his death.  As noted earlier, the Coroner's death certificate listed the cause of death as "Fentanyl, Fluorofentanyl and Oxycodone Toxicity."[34]  Accordingly, the Alabama statute and rationale of the majority opinion in *Estate of Gilliam* combine to bar those claims as having been abated.

Even if plaintiff's claims had not been abated by her son's death prior to suit being filed, she still has not pled a plausible claim for false arrest or malicious prosecution, because her son was arrested pursuant to an indictment of a grand jury. Plaintiff's conclusory assertion that Montarius was "framed" by defendants Perry and Johnson is not supported by her factual allegations.  For that same reason, plaintiff has failed to state a claim for conspiracy, as she cannot show that the alleged agreement between Perry and Johnson to "frame" Montarius resulted in an actual deprivation of his constitutional rights.  *See Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1327 (11th Cir. 2015).

## C.    Defendant Dakota Ross

---

[34] Doc. no. 1 (Complaint) ¶ 41.

Plaintiff alleges a § 1983 claim against Madison County Sheriff's Department Officer *Dakota Ross* for deliberate indifference to her son's medical needs in violation of his rights under the Fourteenth Amendment to the United States Constitution.  Ross argues that he is entitled to qualified immunity.[35]

Whenever a state, county, or municipal officer is sued under 42 U.S.C. § 1983 in a personal, or "individual" capacity, as opposed to being sued as a representative of his state governmental employer, the official is entitled to invoke the so-called "doctrine of qualified immunity" as a defense.  *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991). That doctrine protects state governmental officials whose conduct violated "no clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also*, *e.g.*, *Thomas ex rel. Thomas v. Roberts*, 261 F.3d 1160, 1170 (11th Cir. 2001) (same); *Lassiter v. Alabama A. & M. University*, 28 F.3d 1146, 1149 (11th Cir. 1994) (*en banc*) (same). Stated differently, the doctrine of qualified immunity shields state, county, and municipal officials from suit for money damages *if* a reasonable officer could have believed that his action was lawful, in light of clearly established law and the information possessed by the officer.  *Anderson v. Creighton*, 483 U.S. 635, 641

---

[35] Ross did not argue that this claim had abated under Alabama's survivorship statute.

(1987).  "Even law enforcement officials who 'reasonably but mistakenly conclude that [their challenged actions were lawful]' are entitled to immunity."  *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (quoting *Anderson*, 483 U.S. at 641) (alteration supplied).

It has been said that the doctrine of qualified immunity attempts to strike a balance between "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The doctrine initially requires a defendant to "prove that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'"  *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quoting *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991)).  Plaintiff does not contest that element.

Even so, there are two additional requirements.  The first requires a court to ask whether the facts, viewed "in the light most favorable to the party asserting the injury," show that "the [defendant]'s conduct violated a constitutional right?"  *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (alteration supplied).  If that question is answered affirmatively, the court then must  proceed to analyze the second aspect of the two-part inquiry:  *i.e.*, "whether the right was clearly established."  *Id.*

18

The Eleventh Circuit, sitting *en banc*, recently clarified the applicable standard to establish a claim of deliberate indifference in the context of the Eighth Amendment in *Wade v. McDade*, 106 F.4th 1251 (11th Cir. 2024).[36]   That is, a plaintiff must first show that he suffered a deprivation that was objectively serious; and, second, he must demonstrate that "the defendant acted with 'subjective recklessness as used in the criminal law,'" and " must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff."   *Id.* at 1262 (citation omitted).   In the course of stating that standard, the Eleventh Circuit acknowledged that it "took this case en banc *solely to clarify our inconsistent precedent* and to answer a discrete question of law." *Id.* at 1254 (emphasis supplied). Accordingly, this court cannot conclude that plaintiff has alleged that Ross's conduct violated clearly established law.

Moreover, as Ross observes, plaintiff has completely failed to allege that Ross was aware of facts indicating a serious risk to Montarious's health, or that he drew that inference.   All that plaintiff has alleged is that other detainees told Ross that Montarius was having trouble breathing.   That allegation, without more, is

---

[36] The Eighth Amendment's Cruel and Unusual Punishment Clause applies to convicted prisoners, whereas the Fourteenth Amendment's Due Process Clause applies to pre-trial detainees, such as Montarius.   Even so, "the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees." *Jordan v. Doe*, 38 F.3d 1559, 1564-65 (11th Cir. 1994).

insufficient to establish the subjective component of a deliberate indifference claim. *See, e.g.*, *Taylor v. Adams*, 221 F.3d 1254, 1259 (11th Cir. 2000) (holding no constitutional violation where plaintiff did not show that the defendant fire medics "actually drew the inference that [the decedent] was having a seizure," because "the drawing of such an inference from the observations of a layperson bystander is by no means automatic"); *see also Goodman v. Kimbrough*, 718 F.3d 1325, 1334 (11th Cir. 2013) (holding that a plaintiff's burden of showing a defendant officer was subjectively aware of the risk is not satisfied by merely saying "well, they should have known").

## D.   State Law Wrongful Death Claim

As all of plaintiff's federal claims have been determined to be deficient and, therefore, due to be dismissed, all that remains is her wrongful death claim under Alabama law.[37]  In cases where the federal district court has original jurisdiction over some of the claims, the court also has discretion to entertain state claims that are supplemental to the federal claim.  *See* 28 U.S.C. § 1367(a).  Even so, the district court may decline to exercise supplemental jurisdiction when:

    (1)    the claim raises a novel or complex issue of State law,

    (2)    the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

---

[37] *See* doc. no. 1 (Complaint), at 23-24.

(3)    *the district court has dismissed all claims over which it has original jurisdiction*, or

(4)    in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c) (emphasis supplied).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Carnegie-Mellon University v. Cohill,* 484 U.S. 343, 350 n.7 (1988) (alteration supplied).

Here, all of plaintiff's federal claims have been eliminated.  Accordingly, the court declines supplemental jurisdiction over the remaining state law wrongful death claim, and exercises its discretion to dismiss that claim without prejudice.

## IV.  CONCLUSION

A separate order, consistent with this memorandum opinion, will be entered contemporaneously herewith.

**DONE** this 27th day of August, 2024.

_____
Senior United States District Judge

21